**McMAHON**

v.

**LOCAL NO. 600, TRUCK DRIVERS & HELPERS, GASOLINE & OIL DRIVERS et al.**

**No. 9176(3).**

United States District Court
E. D. Missouri, E. D.

June 8, 1953.

**304**

Jacques Schurre, N. L. R. B., Washington, D. C., Thomas W. Kennedy, N. L. R. B., St. Louis, Mo., for petitioner.

John T. Wiley, Jr., Harry H. Craig, Wiley, Craig & Armbruster, St. Louis, Mo., for respondents.

HARPER, District Judge.

The petitioner seeks a temporary injunction against the respondents pursuant to Section 10(l) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160(l).

The petition sets forth that on March 26, 1953, Osceola Foods, Inc., of Osceola, Arkansas (hereinafter called Osceola), and on March 27, 1953, the Atkins Pickle Sales Company of Atkins, Arkansas (hereinafter called Atkins), filed charges with the National Labor Relations Board (hereinafter called the Board), and on April 27, 1953, Osceola and Atkins filed amended charges alleging inter alia, that the respondents had engaged in and are engaging in unfair labor practice within the meaning of Section 8(b) (4) (A) and (B) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (4) (A) and (B). This charge was referred to the petitioner as the Regional Director for investigation. The petition recites that after an investigation the petitioner has reasonable cause to believe that said amended charges are true, and that a consolidated complaint of the Board based thereon should issue against the respondents.

As a result of the alleged violations of the Act, the petitioner seeks an injunction to enjoin the respondents pending a final adjudication by the Board. A hearing on the order to show cause was held on May 7, 1953.

The question presented to the court is to determine whether the alleged acts of the respondents fall within the provisions of Section 8(b) (4) (A) and (B), and thus constitute unfair labor practice; or, simply stating it: Did the acts of the respondents constitute a secondary boycott? "While § 8(b) (4) does not expressly mention 'primary' or 'secondary' disputes, strikes or boycotts, that section often is referred to in the Act's legislative history as one of the Act's 'secondary boycott sections.'" National Labor Relations Board v. Denver Building Council, 341 U.S. 675, 686, 71 S.Ct. 943, 950, 95 L.Ed. 1284.

It was stipulated that the companies involved are companies engaged in commerce within the meaning of the Act. The respondent, Highway Chauffeurs and Platform Workers, Local Union No. 632, has been consolidated with respondent, Truck Drivers and Helpers, Gasoline and Oil Drivers, Local 600 (hereinafter called Local 600).

The testimony discloses that members of the respondent, Warehouse and Distribution Workers Union, Local 688 (hereinafter called Local 688), employed at various warehouses in St. Louis, starting on or about March 6, 1953, refused to unload trucks owned and loaded with products of Osceola, Atkins and others, which had arrived from the owners' plants driven by a non-union driver, unless a local driver who was a member of Local 600 was employed after their trucks reached St. Louis. The reason given for refusing to unload the trucks until a member of Local 600 was employed was because the truck drivers were non-union. One truck driver was advised if he returned that his truck would not be unloaded unless he had become a union member. The respondents' testimony indicated that the refus-

al to unload these trucks was not based upon the fact that the drivers of the trucks were non-union, but rather based upon the facts that the trucks were over-the-road trucks, and since they were over-the-road trucks they were subject to an agreement covering over-the-road freight in the Central States area between employers and the Central States Drivers Council, which required the employment of a member of Local 600 to assist in city pick-up and delivery for over-the-road hauls.

There was no testimony to the effect that the companies whose trucks were involved were parties to the agreement with the Central States Drivers Council. The members of Local 688 who refused to unload the trucks of Osceola, Atkins and others, were not parties to the contract with respect to over-the-road haulers, and since the contract between Local 688 and their various employers (The General Grocer Company, El-Be Grocer Company, Allen Foods, Inc., Dumont Cartage Company and others) was not placed in evidence, it can be assumed that the agreement did not prohibit the members of Local 688 from unloading the trucks of Osceola, Atkins and others at the various warehouses, even though the driver of the truck was not a member of a union.

Harold J. Gibbons, Secretary-Treasurer of Local 688, stated their position very clearly when he said: "I said I will continue to enforce the policy that over-the-road trucks when they hit the City of St. Louis do one of two things: Either they go to their home terminal, dump their freight and let the city men deliver it, or as soon as they hit the city limits they call the union and ask for a city driver to go with them. It has nothing to do with union members. It is an entirely different matter and that policy will continue."

The refusal of the members of Local 688 to unload out of town trucks is based upon an agreement between certain employers and the Central States Drivers Council, an agreement to which Local 688 is not a party, and is an effort to enforce certain terms of that agreement with respect to requiring all over-the-road haulers, whether parties to the agreement or not, to employ members of Local 600 when they reach the City of St. Louis. Members of Local 688 in attempting to enforce this agreement have and are refusing to unload products shipped by Osceola, Atkins and others to a number of St. Louis warehouses and are in effect preventing those concerns from doing business with Osceola, Atkins and others, unless members of Local 600 are employed by the truck owners when they reach the city.

The National Labor Relations Board in a number of cases has held that similar practices are unfair labor practices and violate Section 8(b) (4) (A) of the National Labor Relations Act. The Second Circuit Court of Appeals in National Labor Relations Board v. Wine, Liquor and Distillery Workers Union, 2 Cir., 178 F.2d 584, 16 A.L.R.2d 762, in effect held the same. The facts here disclose the existence of a primary labor dispute between the respondent, Local 600, and out of town employers of non-union drivers who make deliveries to St. Louis, and further disclose that a secondary employer, the warehouses (The General Grocer Company, El-Be Grocer Company, Allen Foods, Inc., Dumont Cartage Company and others), who do business with the out of town employers, have had pressure exerted on them by the members of Local 688 against the secondary party by refusing to unload the out of town trucks until a member of Local 600 is hired.

This practice on the part of the respondents, Local 600, and Local 688, is a violation of Section 8(b) (4) (A) of the National Labor Relations Act, as amended, and the petitioner is entitled to the injunction sought.

The attorneys for the Petitioner will prepare the Findings of Fact, Conclusions of Law and Judgment to be entered by the court.